IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CRAWFORD & COMPANY, INC.,

   Plaintiff,

     v.

   CIVIL ACTION FILE
   NO. 1:17-CV-2988-TWT

CUNNINGHAM LINDSEY U.S.,
INC., et al.,

   Defendants.

## OPINION AND ORDER

This is an action for, *inter alia*, misappropriation of trade secrets. It is before

the Court on the Defendant Michael P. McKeown's Motion to Dismiss for Lack of

Personal Jurisdiction [Doc. 17]. For the following reasons, McKeown's Motion to

Dismiss [Doc. 17] is DENIED.

## I. Background

The Plaintiff, Crawford & Company, Inc., is a Georgia corporation with its

principal place of business in Atlanta, Georgia.[1] The corporate Defendant,

Cunningham Lindsey U.S., Inc., is a Texas corporation with its principal place of

---

[1]     Compl. ¶ 5.

business in Lewisville, Texas.[2] Both companies provide insurance claims management services. They are direct competitors in the marketplace.[3] The Defendant Michael P. McKeown is a resident of Pennsylvania.[4] He worked for Crawford out of its Mid-Atlantic office, located in Pennsylvania, from February 2016 through his June 2017 resignation, at which time he began working for Cunningham Lindsey.[5]

While employed as a Regional Account Executive for Crawford, McKeown was responsible for sales in New Jersey, Pennsylvania, Delaware, Maryland, and Virginia. In that role, he called on existing and potential clients in his territory to develop new business and grow market share for Crawford.[6] By virtue of this position, McKeown had access to some of Crawford's confidential information and trade secrets, including detailed information about clients, pricing, and business strategies.[7]

---

[2]  *Id.* at ¶ 7.

[3]  *Id.* at ¶ 8.

[4]  *Id.* at ¶ 10. There is another individual Defendant, Larry Daniel, but he is not relevant to this Motion.

[5]  *Id.*

[6]  *Id.* at ¶ 22.

[7]  *Id.* at ¶ 23.

Because of his access to such information, Crawford required McKeown to sign a Confidentiality & Nonsolicitation Agreement.[8] In the Agreement, McKeown acknowledged the importance of Crawford's propriety information and agreed to respect and protect the confidentiality of that information.[9] In order to protect this information, Crawford adopted policies prohibiting the use of personal devices to store confidential information and the use of personal email to transmit work-related documents.[10] McKeown also agreed to not solicit any of Crawford's clients or employees should he leave Crawford at some point in the future.[11]

On June 24, 2017, McKeown decided to leave Crawford and return to Cunningham Lindsey, where he had been previously employed.[12] While he was being recruited to return, he allegedly sent five emails to his personal account containing a total of 37 confidential and proprietary files.[13] McKeown has also allegedly solicited some of Crawford's clients to come over to Cunningham Lindsey.[14] Crawford

---

8       *Id.* at ¶ 26.

9       *Id.* at ¶ 27.

10      *Id.* at ¶¶ 35-36.

11      *Id.* at ¶¶ 32-33.

12      *Id.* at ¶ 49.

13      *Id.* at ¶ 50.

14      *Id.* at ¶ 56.

eventually filed this action, alleging that *inter alia* McKeown violated his Agreement with Crawford and misappropriated its trade secrets. McKeown now moves to dismiss the action for lack of personal jurisdiction.

## II. Legal Standard

"In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, nonresident defendant."[15] The facts presented in the plaintiff's complaint are taken as true to the extent they are uncontroverted.[16] "Where … the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction."[17] If the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff.[18]

## III. Discussion

---

[15]    *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).

[16]    *Foxworthy v. Custom Tees, Inc.*, 879 F. Supp. 1200, 1207 n.10 (N.D. Ga. 1995).

[17]    *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (quotations omitted).

[18]    *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

McKeown has moved to dismiss this action under Rule 12(b)(2) for lack of personal jurisdiction. "A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution."[19] Both steps of the inquiry are often the same, as the long-arm statutes of many states are coextensive with procedural due process.[20]

However, this is not the case in Georgia.[21] Georgia's long-arm statute "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process."[22] This means that sometimes Georgia's long-arm statute extends beyond, and is therefore limited by, procedural due process, while in other situations it is more restrictive.[23] As

---

[19]     *Diamond Crystal*, 593 F.3d at 1257–58 (*quoting United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)).

[20]     *See, e.g.*, CAL. CIV. PROC. CODE § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.").

[21]     *Diamond Crystal*, 593 F.3d at 1259, 1261-62.

[22]     *Id.*

[23]     *Id.* at 1262.

such, this Court must proceed through both steps of the personal jurisdiction analysis

independently.

## A. Georgia's Long-arm Statute

Georgia's long-arm statute permits jurisdiction where a defendant:

(1) Transacts any business within this state;

. . . [or]

(3) Commits a tortious injury in this state caused by an act or omission
outside this state if the tort-feasor regularly does or solicits business, or
engages in any other persistent course of conduct, or derives substantial
revenue from goods used or consumed or services rendered in this state
. . . .[24]

as long as the plaintiff's cause of action "arises out of" that conduct.[25]

The Plaintiff argues that jurisdiction over McKeown arises under the

requirements of both subsection (1) and (3). Georgia courts have interpreted "transacts

any business within the state" to mean that the "nonresident defendant has

purposefully done some act or consummated some transaction in [Georgia]. . . ."[26]

Although "Georgia courts have yet to fully explain the scope" of this language, it is

---

[24]      O.C.G.A. § 9–10–91.

[25]      *Id.* at 1264.

[26]      *Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 517 (2006). *See also
Diamond Crystal*, 593 F.3d at 1260 n.11 (explaining why courts should only use the
first prong of the *Aero Toy Store* test during the long-arm statute analysis).

clear that "a defendant need not physically enter the state."[27] As a result, the Court

must "examine all of a nonresident's tangible and intangible conduct and ask whether

it can fairly be said that the nonresident has transacted any business within Georgia."[28]

In this case, although he was based in Pennsylvania, McKeown took a number

of actions directed at Georgia in the context of his employment relationship with

Crawford. Because Crawford is headquartered in Georgia, McKeown communicated

frequently with Georgia-based Crawford employees.[29] McKeown also visited Georgia

on work-related trips on two separate occasions.[30] McKeown can therefore be said to

have transacted business within Georgia during the course of his employment

relationship with Crawford. And because Crawford's causes of action necessarily arise

from that relationship, this Court has personal jurisdiction under subsection (1) of the

Georgia long-arm statute.[31]

## B. Due Process Clause

---

[27]     *Diamond Crystal*, 593 F.3d at 1262, 1264.

[28]     *Id.*

[29]     Tolson Decl. ¶ 11 [Doc. 32-1].

[30]     *Id.* at ¶¶ 8-9; *see also* McKeown Dep. at 29:1-6, 29:21-31:25, 32:20-33:17 [Doc. 32-2].

[31]     Because subsection (1) is satisfied, the Court need not examine subsection (3), which is a much more restrictive authorization of jurisdiction.

The Constitution's Due Process Clause requires that in order for a court to have personal jurisdiction over a defendant, the defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[32] These minimum contacts exist when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."[33] A defendant's relationship with a forum state can lead to two types of jurisdiction: general and specific jurisdiction.[34] "A party is subject to general jurisdiction only when it has continuous and systematic contacts with the forum state."[35] There is no dispute that McKeown did not have this level of contact with Georgia. Thus, to the extent this Court has personal jurisdiction over McKeown, it must be specific.

Specific jurisdiction is based on affirmative answers to three questions:

(1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident

---

[32] *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 (1984) (alteration in original) (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[33] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (*quoting World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

[34] *Paul, Hastings, Janofsky & Walker, LLP v. City of Tulsa, OK*, 245 F. Supp. 2d 1248, 1253 (N.D. Ga. 2002).

[35] *Id.* (quotations omitted).

defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice.[36]

"The plaintiff bears the burden of establishing the first two prongs. . . ."[37] Should he do so, the defendant then bears the burden of making a compelling case that establishes the third.[38]

As the Court already discussed in relation to Georgia's long-arm statute, the Plaintiff's claims clearly arise out of the employment relationship between McKeown and Crawford, which satisfies the first prong. For similar reasons, the Defendant's employment relationship also satisfies the second prong. Crawford alleges numerous claims against McKeown. With regard to the contract, statutory, and equitable claims, McKeown purposefully availed himself of the privilege of conducting activities in Georgia when he decided to work for Crawford, a Georgia company. Although he was primarily based in Pennsylvania, he frequently made calls to Georgia-based employees, he made multiple work-related trips to Georgia for training, and he signed an employment contract with a Georgia company. "Each of these, by itself, might not

---

[36]     *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013).

[37]     *Id.*

[38]     *Id.*

be enough to confer jurisdiction."[39] But when taken together, it becomes clear that McKeown's employment with Crawford led to a more significant relationship with Georgia than mere incidental contact.

The tort claims, meanwhile, are analyzed slightly differently than the others. In addition to the traditional minimum contacts test, intentional torts can also be evaluated under the "effects" test. Under the effects test, a defendant establishes purposeful availment when the tort was: "(1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state."[40] Taking the allegations as true, the alleged torts were clearly intentional. McKeown allegedly targeted this forum by stealing information from a Georgia-based company, and he should have anticipated that the harm caused by his misappropriation would be suffered in Georgia. "The Constitution is not offended by the exercise of [Georgia's] long-arm statute to effect personal jurisdiction over [McKeown] because his intentional conduct in his state of residence was calculated to cause injury to [Crawford] in [Georgia]."[41] Thus, all of the claims satisfy the minimum contacts requirements of the Due Process Clause.

---

[39]     *Numeric Analytics, LLC v. McCabe*, 161 F. Supp. 3d 348, 355 (E.D. Pa. 2016) (finding jurisdiction over remote employees with regard to contract claims).

[40]     *Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008).

[41]     *Id.* at 1288.

Turning to the only remaining issue, the burden now rests on the Defendant to make a compelling case that exercising jurisdiction over him would violate traditional norms of fair play and substantial justice. This is a burden he fails to meet. The Court must consider the "the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute."[42] Although McKeown would be inconvenienced by having to travel, that burden is outweighed by Crawford's interest in litigating this case in a single forum.[43] The Defendant argues that because McKeown lives in Pennsylvania, and most of the relevant and necessary witnesses and evidence are located within Georgia, that litigating here in Georgia would be unduly burdensome on him. But these facts actually support the opposite conclusion. Given that most of the evidence is here, the witnesses are here, and the harm was suffered here, Georgia clearly has a strong interest in adjudicating this dispute. Additionally, McKeown knew that he was working for a Georgia company, and that his alleged actions would cause harm that was primarily felt in Georgia. For all of these reasons, the Court finds that exercising jurisdiction over the Defendant would not violate traditional notions of fair play and substantial justice.

---

[42]     *Id.* (*citing World–Wide Volkswagen*, 444 U.S. at 292).

[43]     *Numeric Analytics*, 161 F. Supp. 3d at 356.

## IV. Conclusion

For the following reasons, the Defendant's Motion to Dismiss for Lack of

Personal Jurisdiction [Doc. 17] is DENIED.

SO ORDERED, this 15 day of November, 2017.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge